**UNITED STATES of America, Plaintiff,**

**and**

**Kalispel Indian Tribe, Plaintiff-Intervenor,**

**v.**

**PEND OREILLE COUNTY PUBLIC UTILITY DISTRICT NO. 1, a municipal corporation, Defendant,**

**and**

**Department of Natural Resources, State of Washington, Defendant-Intervenor.**

**No. C–80–116–RMB.**

United States District Court, E.D. Washington.

May 25, 1984.

John E. Lamp, U.S. Atty., Earl A. Hicks, Asst. U.S. Atty., Spokane, Wash., for plaintiff.

Robert D. Dellwo, Dellwo, Rudolph, & Schroeder, P.S., Spokane, Wash., for plaintiff-intervenor.

James McNally, McNally & Stewart, Jerry K. Boyd, Paine, Hamblen, Coffin & Brooke, Spokane, Wash., for defendant.

Kenneth O. Eikenberry, Atty. Gen., J. Lawrence Coniff, Asst. Atty. Gen., Olympia, Wash., for defendant-intervenor.

## ORDER

BILBY, District Judge.

This matter is before the Court on the motions for summary judgment of defendant Pend Oreille County Public Utility District No. 1 and defendant-intervenor Washington State Department of Natural Resources. They seek judgment that the Kalispel Indian Tribe has no interest in the bed and banks of the Pend Oreille River, arguing that such an interest could result only from a conveyance ·by the United States before Washington was admitted as a state and that no such conveyance was made. The plaintiff-intervenor Kalispel Tribe and plaintiff United States have argued in response that aboriginal, or Indian, title gave the tribe an ownership interest in the bed and banks.

The courts have never squarely addressed the question of competing claims to the same navigable waters by an Indian tribe and a state, where the Indian claim is based on aboriginal title. One line of cases holds that states, as a general rule, gain absolute title to lands underlying navigable waters upon their admission to the Union. *See, e.g., Montana v. United States*, 450 U.S. 544, 551, 101 S.Ct. 1245, 1251, 67 L.Ed.2d 493 (1981); *Oregon ex rel. State Land Board v. Corvallis Sand and Gravel Co.*, 429 U.S. 363, 370, 97 S.Ct. 582, 586, 50 L.Ed.2d 550 (1977); *Pollard's Lessee v. Hagan*, 44 U.S. (3 How.) 212, 222–23, 229, 11 L.Ed. 565 (1845). The ownership of lands under navigable waters is considered an incident of sovereignty. *Montana*, 450 U.S. at 551, 101 S.Ct. at 1251. Before a state is admitted, the bed and banks of navigable waters are held in trust for the future state by the United States and conveyed to the state at its admission. *Id.* Thus, the newer states entered the Union on an "equal footing" with the original 13 states, which held title to the navigable waters subject only to rights later surrendered by the Constitution. *Oregon v. Corvallis*, 429 U.S. at 373, 97 S.Ct. at 588. The United States has the power to convey the bed and banks in derogation of the state's interest before statehood, but there is a presumption against such a conveyance, and the intention to convey must be definitely declared or made plain. *Montana*, 450 U.S. at 552, 101 S.Ct. at 1251.

A separate and distinct line of cases deals with the question of aboriginal title. From the first statement of aboriginal title

in *Johnson v. M'Intosh*, 21 U.S. (8 Wheat.) 543, 5 L.Ed. 681 (1823), the Court has held that aboriginal title gives a tribe the right to exclusive occupation and use of its ancestral lands until that right is extinguished by the United States Congress. *See, e.g., Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974); *United States v. Alcea Band*, 329 U.S. 40, 67 S.Ct. 167, 91 L.Ed. 29 (1946); *United States ex rel. Hualpai Indians v. Santa Fe Pacific Railroad Co.*, 314 U.S. 339, 62 S.Ct. 248, 86 L.Ed. 260 (1941). The United States holds the fee title to aboriginally held lands, and the tribe has a right of occupancy good against all but the United States. *Oneida Indian Nation*, 414 U.S. at 667, 94 S.Ct. at 777.

For purposes of these motions, the parties and the Court have assumed the initial existence of aboriginal title in the Kalispels to a portion of the Pend Oreille River. The issues for decision are whether such title could ever defeat the state's right to ownership under the Equal Footing Doctrine, and whether aboriginal title was extinguished by the establishment in 1914 of the Kalispel Reservation or by a 1963 order of the Indian Claims Commission.

■ After careful consideration of the cases and the parties' arguments, the Court finds that the tribe could have retained an interest in the bed and banks of the Pend Oreille under aboriginal title, despite the operation of the Equal Footing Doctrine. States obtained only that title which the United States actually held before statehood, and in the case of Indian lands that was the bare fee. *See Oneida Indian Nation*, 414 U.S. at 667, 94 S.Ct. at 777; *Johnson v. M'Intosh*, 21 U.S. (8 Wheat). at 574. Until aboriginal title was extinguished by the United States, generally by a treaty in which a tribe ceded its rights, the United States would not have absolute title and therefore could not convey it to a state. *Cf. Hualpai Indians*, 314 U.S. at 345–47, 62 S.Ct. at 251–52.

■ A mere conveyance of lands subject to aboriginal title does not extinguish tribal title. In the *Hualpai Indian* case, the Supreme Court held that a tribe's aboriginal title would survive a grant of the land from the United States to the railroad. 314 U.S. at 345, 62 S.Ct. at 251. Aboriginal title could be extinguished only by Congress, and if it were not extinguished the railroad would take the fee title subject to the encumbrance of Indian title. *Id.* at 347, 62 S.Ct. at 252. Of course, the tribe would have to show that the land had been part of its ancestral home, in the sense that it was occupied exclusively by the tribe, in order to establish aboriginal title. *Id.* at 345, 62 S.Ct. at 251.

■ Other factors have contributed to the Court's conclusion. First, an extinguishment of aboriginal rights by Congress "cannot be lightly implied in view of the avowed solicitude of the Federal Government for the welfare of its Indian wards." *Hualpai Indians*, 314 U.S. at 354, 62 S.Ct. at 255. Therefore, it seems inappropriate to find that aboriginal title is extinguished merely by operation of the Equal Footing Doctrine, where Congress has not expressed an intention that the doctrine have that effect. Second, the Supreme Court has recognized that a treaty between the United States and a tribe is "not a grant of rights to the Indians, but a grant of rights from them—a reservation of those not granted." *United States v. Winans*, 198 U.S. 371, 381, 25 S.Ct. 662, 664, 49 L.Ed. 1089 (1905); *accord, Washington v. Fishing Vessel Association*, 443 U.S. 658, 678, 99 S.Ct. 3055, 3071, 61 L.Ed.2d 823 (1979). A tribe retains all rights not expressly ceded by treaty, so long as the rights are consistent with the tribe's sovereign dependent status. *United States v. Adair*, 723 F.2d 1394, 1413 (9th Cir.1983).

The Court also has considered the presumption against conveyance of navigable waters established in the Equal Footing cases. But those cases all deal exclusively with the issue of conveyances; here, the question is not one of conveyance but of a pre-existing interest held by the tribes. The United States is not alleged to have conveyed an interest in the Pend Oreille to the Kalispels before statehood; rather, it is

alleged that the tribe held a beneficial title to occupancy and use from time immemorial, while the United States held only the fee. Therefore, it appears that the presumption against conveyances is inapplicable. Moreover, even if the presumption were to apply, there is a countervailing presumption in favor of Indian tribes. *Choctaw Nation v. Oklahoma*, 397 U.S. 620, 634, 90 S.Ct. 1328, 1336, 25 L.Ed.2d 615 (1970); *see Hualpai Indians*, 314 U.S. at 353–54, 62 S.Ct. at 255.

In addition, the state of Washington's Enabling Act conditioned the state's admission on a disclaimer of title to lands within the state that were owned or held by Indian tribes. Enabling Act, February 22, 1889, 25 Statutes at Large 676. Finally, although navigable waters are considered an incident of sovereignty, that alone should not be enough to overcome aboriginal title, since the states and federal government can convey lands under navigable waters to private interests. Thus, these lands are not irrevocably tied to the sovereign.

In summary, the Court finds that the state and the PUD are not entitled to summary judgment. If the Kalispel tribe can establish the existence of aboriginal title to the Pend Oreille River, then the tribe would have a current right to occupancy and use of the bed and banks of the river where it flows through the ancestral lands. The state would have fee title to the bed and banks, burdened by the tribe's beneficial interests, as well as by the United States' navigational servitude. *See United States v. Rands*, 389 U.S. 121, 123, 88 S.Ct. 265, 266, 19 L.Ed.2d 329 (1967).

The last issue for consideration is whether aboriginal title in the Kalispels, if it once existed, was extinguished in 1914 or 1963. The Kalispel reservation was created by Executive Order in 1914. Only Congress has authority to extinguish aboriginal title. *Hualpai Indians*, 314 U.S. at 347, 62 S.Ct. at 252. An executive action taken pursuant to congressional authority may extinguish aboriginal title only if Congress clearly intended to permit extinguishment by that means. *United States v. Dann*, 706 F.2d 919, 928–29 (9th Cir.1983). A tribe may also voluntarily abandon aboriginal land not included within the reservation. *Hualpai Indians*, 314 U.S. at 356–58, 62 S.Ct. at 256–57. The Court finds that there are disputed issues of fact involved in determining whether the 1914 reservation extinguished aboriginal title.

In 1963, the Indian Claims Commission approved a compromise settlement of the Kalispel claim for compensation for a taking of land along the Pend Oreille and Clark Fork rivers. In *United States v. Dann*, 706 F.2d 919 (9th Cir.1983), the Ninth Circuit held that the Indian Claims Commission did not have jurisdiction to extinguish aboriginal title. Instead, the Commission had the power only to compensate tribes for claims arising before 1946, whether those claims arose from a taking of aboriginal title or other action by the United States. *Id.* at 928. Therefore, it seems apparent that the Kalispels could not have lost aboriginal title in the claims process.

IT IS ORDERED that the defendant's and defendant-intervenor's motions for summary judgment are DENIED.